**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CANVASSING CELL-SITE SIMULATOR TO IDENTIFY A TARGET CELLULAR DEVICE )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:26 MJ 6151<br><br>MAGISTRATE JUDGE<br>CARMEN E. HENDERSON<br><br><br>**MEMORANDUM AND OPINION** |

With the rapid growth of new technologies and investigative tools, law enforcement officials seek to utilize evolving surveillance technologies to aid in criminal investigations. One such investigative tool, the canvassing cell-site simulator, employs a device that sends signals to *all cellular devices in the area*, and in reply, broadly captures data about individuals both involved and uninvolved in suspected criminal activity. On June 15, 2026, the government submitted a search warrant application, affidavit, and attachments for the use of a canvassing cell-site simulator. This Court denies the search warrant application for the reasons set forth below.

I.      **Background**

a.  **Canvassing Cell-Site Simulators**

A cell-site simulator is an electronic device used by law enforcement to imitate a cell tower, by sending signals to nearby cellar devices (i.e., tablets, cell phones, or other devices that have cellular service), which in reply, broadcast signals that include their device identifiers. *See In re Warrant Application for Use of Canvassing Cell-Site Simulator*, 654 F. Supp. 3d 694 (N.D. Ill. 2023); *United States v. Tutis*, 216 F. Supp. 3d 467, 476 (D.N.J. 2016); *Matter of Use of A Cell-Site Simulator to Identify a Cellular Device in a Narcotics Trafficking Case*, 623 F. Supp.

1

3d 888, 890 (N.D. Ill. 2022). Additionally, "the [cell-site simulator] captures a vast array of information, including, but not limited to, the cell phones' electronic serial number ("ESN") or international mobile subscriber identification ("IMSI"). A cell phone need only be on for the cell-site simulator to capture the cell phone's ESN and IMSI."[1] *In the Matter of the Application of the of Am. for an Order Relating to Telephones Used by Suppressed*, No. 15-0021, 2015 WL 6871289, at *2 (N.D. Ill. Nov. 9, 2015).

Cell-site simulators are commonly used for two purposes in criminal investigations, (1) to *locate* a cellular device when its device identifiers are known or to (2) *identify* a cellular device when its device identifiers are unknown. *See In re Use of a Cell-Site Simulator to Locate a Cellular Device Associated with One Cellular Tel. Pursuant to Rule 41*, 531 F. Supp. 3d 1 (D.D.C. 2021); Department of Justice Policy Guidance: Use of Cell-Site Simulator Technology (Sept. 3, 2015). When a cell-site simulator is used to identify a cellular device, it is called a "canvassing" cell-site simulator ("CCSS"). *See In re Warrant Application for Use of Canvassing Cell-Site Simulator*, 654 F. Supp. 3d at 700.

Additionally, a CCSS captures broad swaths of device identifiers in locations where the suspect is known to be and law enforcement officers attempt to identify the suspect by process of elimination. *See, e.g., Tutis,* 216 F. Supp. 3d at 470. ("By such process of elimination, the officer can deduce the phone numbers which may belong to the suspect, and then match those few numbers to numbers known to be involved in the illegal [activity]."). In turn, a CCSS casts a broad net sweeping data belonging to largely uninvolved individuals. *See id.* ("Canvassing cell-site

---

[1] In addition to identifying the cellular device, the IMSI also reveals the associated device's network provider, allowing the government without any further information or data to subpoena the provider for de-anonymized subscriber information based on the IMSI. This subscriber information includes the device's phone number, and the name and address associated with the device's account.

simulators thus pose a risk to the privacy rights of innocent third parties whose location (and possibly via subpoena subscriber) data is collected *en masse* by investigators as part of their effort to identify a single device (or a small number of devices) used by a criminal suspect") (emphasis in original).

### b. The Warrant at Issue

On June 15, 2026, the government sought approval of a warrant for use of CCSS for up to 30 days, 24 hours a day, to identify the cellular device(s) used by a suspect involved in criminal activity in Akron, Ohio. The affidavit to the warrant application established probable cause to believe that a specific individual is using one or more unknown cellular devices in criminal activity. The affidavit also suggested that there is probable cause to believe that uncovering the identity of the cellular device(s) would unveil more evidence of criminal activity.

Moreover, in an attachment to the warrant application, the government described five different locations at which a CCSS could be used to identify the suspect's cellular device(s) "when the officers to whom it is directed have reason to believe that [the suspect] is present" and "in the vicinity of" the following locations:

- the suspect's residence;
- the suspect's overnight location;
- the suspect's daytime location; and
- two other densely populated locations the suspect frequently visited.

The government also represented that it would take no further investigative steps with respect to the device identifiers collected by the CCSS until after the identifiers for the suspect's cellular device(s) had been captured at multiple locations and/or multiple times at a common location. Finally, the government represented that when investigators determined the identity of the suspect's device(s), they would end the collection and delete (within an unspecified time) any information collected concerning any other cellular device other than the suspect's device(s).

**II.     Law and Analysis**

The Court's concern in the issuance of this canvassing cell-site simulator is the broad nature of the search request, the volume of data capturing uninvolved individuals in the privacy of their homes and following the commands of the Fourth Amendment despite the use of emerging technologies. The government must adhere to the commands of the Fourth Amendment despite the continual advancement of investigative technology. *See Carpenter v. United States,* 585 U.S. 296, 320 (2018) (quoting *Olmstead v. United States,* 277 U.S. 438, 473–474 (1928)) ("[T]he [Supreme] Court is obligated—as '[s]ubtler and more far-reaching means of invading privacy have become available to the Government'—to ensure that the 'progress of science' does not erode Fourth Amendment protections."); *United States v. Chatrie*, 136 F.4th 100 (4th Cir. 2025) (Gregory, R. dissenting) ("[T]he people's rights against unreasonable searches and seizures cannot bend to accommodate the volatility of technology. Rather, new technologies must bend to accomplish the vitality of the protections guaranteed to the people under the Fourth Amendment."); *In re Warrant Application for Use of Canvassing Cell-Site Simulator*, 654 F. Supp. 3d at 721 ("The Court also notes that the sheer fact that a technology exists does not mean that there must be circumstances in which a warrant authorizes broad use of that technology."). The Court addresses the Fourth Amendment requirement of particularity and prohibition against overbroad warrants below. [2]

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized.*

---

[2] The Court will not address whether the use of a cell site simulator is a search as current DOJ policy requires law enforcement to obtain a warrant. The Court also will not address probable cause as the Court finds the probable cause requirement is satisfied in the warrant application.

U.S. Const. amend. IV (emphasis added). The Fourth Amendment's particularity requirement ensures that searches are limited to specific areas and things for which there is probable cause to search. *Maryland v. Garrison*, 480 U.S. 79, 85 (1987). Additionally, the particularity requirement "[responded] to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Riley v. California*, 573 U.S. 373, 403 (2014). These searches left to "the discretion of the executing officials the decision as to which persons should be arrested and which places should be searched." *Steagald v. United States*, 451 U.S. 204, 220 (1981). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search," the Supreme Court has emphasized, "the [particularity] requirement ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Garrison*, 480 U.S. at 84.

In this matter, the government requests a CCSS that includes access to the information of thousands of individuals in the Akron, Ohio area. The five locations identified in the cell-site canvassing warrant are located in close proximity to a university, a hospital, numerous shops, and restaurants. *See United States v. Chatrie*, 590 F. Supp. 3d 901, 922–923 (E.D. Va. 2022) (finding a geofence warrant with a radius of 387 meters to lack particularity as it included "a Ruby Tuesday restaurant, a Hampton Inn Hotel, several units of the Genito Glen apartment complex, a self-storage business, a senior living facility, two busy streets (Hull Street and Price Club Boulevard), and what appear to be several residences...". Moreover, unlike geofence warrants[3] this technology

---

[3] The Department of Justice established a three-step protocol for seeking geofence warrants. At step one, law enforcement receives a warrant compelling Google to disclose an anonymized "list of all Google user[s] whose Location History data indicates were within the geofence during a specified timeframe." This process was explained in *United States v. Chatrie*, 590 F. Supp. 3d 901, 914 (E.D. Va. 2022).

provides no way to discern the geographic area included in a CCSS. *See In re Warrant Application for Use of Canvassing Cell-Site Simulator*, 654 F. Supp. 3d at 715 ("But as the government describes, the three identified quarter mile radiuses do not and cannot reflect the geographic area that a CCSS would actually search; they simply reflect how close the machine would be to the suspect's residence or locations where the suspect has been seen."). The proposed CCSS permits law enforcement to use the CCSS "when the officers to whom it is directed have reason to believe that [the suspect] is present" and "in the vicinity of" the identified locations. The government did not provide the coverage area of the CCSS, provide geographic parameters of the search, the number of affected subscribers or the amount of GPS data captured. Thus, the proposed CCSS would allow the government to obtain the IMSI of thousands of uninvolved, unsuspecting individuals. In turn, law enforcement officials would gain unbridled discretion to examine the movements of private citizens at all times for thirty days.

This CCSS therefore suffers from the same particularity defect as that at issue in *In re Warrant Application for Use of Canvassing Cell-Site Simulator*, 654 F. Supp. 3d 694 (N.D. Ill. 2023). In that case, the government sought,

> [A]pproval of a warrant for use of a canvassing cell-site simulator for up to 30 days to identify and locate the unknown cell phone(s) used by that individual. The warrant identified three locations at which a CCSS could be used to identify the suspect's device(s) "when the officers to whom it is directed have reason to believe that [the suspect] is present": (1) the "surrounding area" of the suspect's residence; (2) the "surrounding area" of any location where law enforcement surveillance observes or has "recently" observed the suspect; and (3) the "surrounding area" where geo-location information for one of the suspect's [other] known cellular devices indicates that that phone located.

*Id.* at 696. There, just as here, the proposed warrant allowed the government access to thousands of identifiers and location data in an undetermined geographic area. *Id*. at 715–16. The court found the CCSS "akin to a warrant application to search an entire apartment building—or an entire city

block—where the government has probable cause only that evidence of a crime will be found in one specific apartment unit, for up to 30 days." *Id.* As that court recognized—and as this Court now concludes—the Fourth Amendment's particularity requirement bars this sort of "rummaging" through the proverbial home.

### III.    Conclusion

In sum, this Court finds the proposed CCSS does not satisfy the particularity requirement of the Fourth Amendment nor the prohibition against overbroad warrants. As a result, the warrant application is denied.

Dated: June 22, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE